MADELEINE M. LANDRIEU, Judge.
Iiln this personal injury action, the defendants, Clarence Scott Malone d/b/a Malone Electric (“Mr. Malone”) and his insurer, Progressive Security Insurance Company (“Progressive”), brought a third party demand seeking indemnity from Southern Scrap Material Co., LLC (“Southern Scrap”) and SSX, LC (“SSX”). Mr. Malone and Progressive moved for summary judgment on their third party demand, which the trial court granted. Southern Scrap and SSX appeal that judgment. For the reasons that follow, we reverse the trial court’s granting of summary judgment and remand for further proceedings.
FACTS AND PROCEEDINGS BELOW
On December 22, 2007, David Hall was a guest passenger in a car that allegedly was struck by a vehicle driven by the defendant, Mr. Malone. The collision occurred on the property of Southern Scrap while Mr. Malone was completing a contract job for Southern Scrap. Mr. Hall filed this suit against Mr. Malone. The suit alleges that Mr. Hall sustained personal injuries in the accident, that Mr. Malone was solely at fault in causing the collision, and that Mr. Malone was acting in the course and scope of his employment at the time the accident occurred.
*93 | ¡.Mr, Malone answered the petition and asserted that Mr. Juan Judy, the driver of the car in which Mr. Hall was sitting, was solely at fault in causing the accident.[1] Mr. Malone and Progressive filed a third party demand against “SSX, LC d/b/a Southern Scrap” and Mr. Judy alleging that, pursuant to a hold harmless agreement (“the Agreement”) between them, SSX was obliged to indemnify Mr. Malone for any damages he might owe to Mr. Hall as a result of the accident.
The third party demand was later amended to name additional third party defendants: “Southern Scrap Material Company,” “Southern Scrap Recycling,” and “Southern Recycling, LLC.” (hereinafter collectively referred to as “the Southern Scrap companies”).[2] It was subsequently amended twice more to assert that Mr. Malone was owed a defense and reimbursement of attorney’s fees and costs.
Southern Scrap and SSX filed a motion for summary judgment seeking dismissal of the third party demand. Mr. Malone and Progressive filed a counter motion for summary judgment seeking a judicial determination that indemnity was owed. The two motions were heard by the trial court on the same day. The trial found that Southern Scrap and SSX owed indemnity to Mr. Malone and Progressive. Accordingly, the court denied the Southern Scrap motion and granted the Malone motion, but reserved ruling on the issue of attorneys’ fees and failed to address costs. Southern Scrap and SSX appeal the granting of summary judgment.
lalSSUE
The sole issue on appeal is whether the trial court erred by interpreting the Agreement as providing for indemnity by Southern Scrap and SSX under the circumstances presented here. The appellants contend there are genuine issues of material fact that preclude summary judgment on that issue.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Duncan v. U.S.A.A. Ins. Co., 2006-363, p. 3 (La.11/29/06), 950 So.2d 544, 547. “The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). Thus, the reviewing court must determine whether there is any genuine issue of material fact and whether the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(C); Cressionnie v. Liberty Mutual Ins. Co., 98-0534, p. 3 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, 366.
DISCUSSION
The Agreement was executed by ’ Mr. Malone (individually and on behalf of Malone Electric Company) and SSX on April 18, 2005. Mr. Malone contends that when the Agreement was presented to him, he understood it to be applicable to all Southern Scrap locations. He further contends that if he had failed to sign the Agreement, he would have received no further work orders from the Southern Scrap group.
*94 14Southern Scrap and SSX dispute Mr. Malone’s contentions and assert that the Agreement was only between Mr. Malone and SSX, not Mr. Malone and Southern Scrap. They further maintain that neither Southern Scrap, Southern Recycling, nor any of the other Southern Scrap companies was a party or a signatory to the Agreement and thus, none of them is bound by it. They argue that although SSX and Southern Scrap share the same parent company, they are independently owned and operated, and bear no legal relationship to each other such that an indemnity agreement signed by SSX would also bind Southern Scrap. With regard to SSX, they argue that the Agreement does not apply in this instance because the accident did not occur on the premises of SSX, but rather on the premises of Southern Scrap.
Southern Scrap and SSX thus contend that the summary judgment was improperly granted because there are genuine issues of material fact remaining as to: (1) Whether SSX can owe indemnity given that the accident occurred on the premises of Southern Scrap, not SSX; (2) Whether summary judgment on indemnity is appropriate when there is a material dispute as to the legal relationship between SSX and Southern Scrap; (3) Whether indemnity is due when the subject accident did not arise out of Mr. Malone’s activities for SSX; (4) Whether indemnity is due when the sole cause of the accident is the fault of Mr. Malone; and (5) Whether indemnity is due when, by express terms of the Agreement, Mr. Malone is responsible for his own portion of fault with respect to claims and liabilities asserted or incurred by third parties.
The Agreement states, in pertinent part: This Agreement is made by and between SCOTT MALONE, Individually and on behalf of MALONE ELECTRIC COMPANY, an Louisiana entity (hereinafter “INDEMNITOR”) and SSX, L.C., a | ^Louisiana limited liability company (hereinafter the “COMPANY”), which, as used herein is defined to mean and include the COMPANY and any Division, Subsidiary, Affiliate, Member, Stockholder, Officer, Director, Agent, and/or Employee thereof and/or of its or theirs who, for good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, who agree: COMPANY agrees to defend, indemnify and hold harmless, protect and release INDEMNITOR, its agents, assigns, employees, insurers, officers, members, stockholder, successors and underwriters from and against any and all claims, demands, causes of action and liabilities of every kind and character, regardless of whom is at fault, which are asserted by COMPANY’S own employees, agents, or other individuals or companies whose services were contracted for by COMPANY (except INDEMNITOR or its employees or contractors), arising out of or in any way related to INDEMNITOR’S activities and operations while on or about the premises of COMPANY.
With regard to Third Parties, which are defined as those individuals or entities not a party to this Agreement and not described above, COMPANY and IN-DEMNITOR shall only be responsible for their own portion of fault regarding any claims, demands, causes of action and liabilities asserted or incurred by Third Parties.
Indemnity agreements are strictly construed and the party seeking to enforce such an agreement bears the burden of proof. Robin v. Wong, 2007-0547, p. 4 (La.App. 4 Cir. 10/24/07), 971 So.2d 386, 388, writ denied, 2007-2245 (La.1/11/08), 972 So.2d 1169. Mr. Malone and Progres *95 sive bore the burden of proof on their motion for summary judgment.
It is undisputed that the only named parties/ signatories to the Agreement are Mr. Malone and SSX. Also, the Agreement expressly provides that SSX, referred to as “COMPANY,” agrees to indemnify Mr. Malone, referred to as “IN-DEMNITOR,” from claims “arising out of or in any way related to INDEMNITOR’S activities and operations while on or about the premises of COMPANY.” (Emphasis added.) Despite the language of the Agreement, however, Mr. Malone contends that the intent of the parties was to bind not only |fiSSX, but also Southern Scrap and all the “Southern Scrap” locations at which Mr. Malone performed jobs. Therefore, Mr. Malone’s burden on summary judgment was to submit evidence sufficient to prove that the Agreement also applied to Southern Scrap.
Because the Agreement expressly includes any “Division, Subsidiary, Affiliate, Member, Stockholder, Officer, Director, Agent, and/or Employee” of SSX, Mr. Malone had to demonstrate that Southern Scrap qualifies as one of those entities in relation to SSX. Specifically, Mr. Malone argues on appeal that Southern Scrap is an “affiliate” of SSX.
The term “affiliate” is not defined in the Agreement. According to the dictionary, “affiliate” means “a condition of being united, being in close connection, allied, or attached as a member or branch.” Black’s Law Dictionary (Rev. 4th Ed.) (citing Johanson v. Riverside County Select Groves, Inc., 4 Cal.App.2d 114, 40 P.2d 530, 534). An affiliate is defined as an “organization associated with another in a subordinate relationship.” The American Heritage Dictionary of the English Language (1973 Ed.) (Emphasis supplied). It is understood to be a “person or organization” with a close connection as a “member or branch” of another entity. Merriam Webster’s Collegiate Dictionary (10th Ed.). See also Hopkins v. Howard, 05-0732, pp. 8-9 (La.App. 4 Cir. 4/5/06), 930 So.2d 999, 1004-05.
Mr. Malone failed to put forth evidence demonstrating that Southern Scrap is an affiliate (or, for that matter, a member, stockholder, officer, director, agent, or employee) of SSX. His evidence consisted of invoices showing that he had done jobs at each of the various Southern Scrap companies as well as at SSX, and his |7own affidavit reiterating that he believed the Agreement with SSX also covered Southern Scrap. The language of the Agreement refutes this affidavit.
Southern Scrap submitted the deposition testimony of Chip Hunter, the president of SSX, and Randy Boudreaux, the representative of Southern Scrap. Both Mr. Hunter and Mr. Boudreaux testified in their depositions that SSX and Southern Scrap shared only a parent company, Southern Recycling. Mr. Hunter stated that there are five individual operating scrap entities which have the same parent company, including: SSX (Baton Rouge area); Southern Scrap (New Orleans area); Southern Scrap of Morgan City; Auto-Shred (Pensacola-Mobile); and Tampa Resource Recycling. Mr. Boudreaux testified that each location “managed itself,” and that whether or not an indemnity agreement was required was the decision of the particular manager. Most importantly, Mr. Hunter testified that he had signed the Agreement in question on behalf of SSX only.
This evidence submitted by Southern Scrap indicates, at the very least, the existence of a genuine issue of material fact with regard to whether any legal relationship existed between Southern Scrap and SSX such that the Agreement, signed only by SSX, would also bind Southern Scrap. *96 In addition, the fact that the accident did not occur on the property of SSX raises a genuine issue of material fact as to whether the Agreement obligates SSX to indemnify Mr. Malone under the circumstances presented here.
Therefore, the trial court erred by granting the Malone motion for summary judgment holding that SSX and Southern Scrap are obligated to indemnify Mr. Malone and Progressive. In light of this disposition, all other issues raised by the appellants are pretermitted.
^CONCLUSION
Because we find genuine issues of material fact that preclude summary judgment, we reverse the trial court’s granting of summary judgment in favor of Mr. Malone and Progressive, and remand the matter to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. Mr. Malone alleged that Mr. Judy ran into him while his vehicle was parked.

. The third party plaintiffs asserted that the Agreement was intended to be between Mr. Malone and "all Southern Scrap entities for which he was performing services, as evidenced by work at various locations and payment by various entities.”