MADELEINE M. LANDRIEU, Judge.
| plaintiffs, Chaniel Age and Varney Goba, appeal the trial court’s granting of summary judgment in favor of defendants, DLJ Mortgage Capital, Inc. [“DLJ”] and *1187 Select Portfolio Servicing, Inc. [“Select”]. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
On June 1, 2009, the plaintiffs purchased by Special Warranty Deed the real property (a house and lot) located at 6150 East-over Drive in New Orleans. Three years later, on July 18, 2012, the plaintiffs filed suit alleging there was a title defect the defendants were bound to cure. The named defendants included the seller, DLJ Mortgage Capital, Inc. [hereinafter referred to as “DLJ”];[1] Select Portfolio Servicing [hereinafter referred to as “Select”], DLJ’s attorney in connection with the sale; Resource Title Agency, Inc. [hereinafter referred to as “Resource Title”], which performed the title examination; and First American Title Insurance Company [hereinafter referred to as “First American”], which issued the title j2insurance policy.[2] The plaintiffs alleged that substantial portions of the house they had purchased encroached upon an adjacent piece of property, which was subject to a tax sale. In an amended petition, the plaintiffs alleged that they had learned about the encroachments sometime after they had purchased the property[3] when a relative had performed a computer search relating to tax sales in the neighborhood. The plaintiffs further alleged that they did not know when the complained-of encroachments had come into existence. In the amended petition, the plaintiffs sought damages from the defendants (in a reasonable amount to be determined by the court) for the defendants’ alleged failure to deliver merchantable title.
The issuer of the title insurance policy, First American, filed a motion for summary judgment based upon the fact that its policy expressly excluded claims for loss or damage arising from encroachments or other such matters that would have been disclosed by an accurate survey of the premises. The plaintiffs do not dispute that they expressly declined to have a survey done. The trial court granted First American’s motion for summary judgment on March 21, 2013. Neither the plaintiffs nor any of the remaining defendants appealed the dismissal of First American from the lawsuit.[4]
Subsequently, DLJ and Select filed a motion for summary judgment that was heard on July 19, 2013. DLJ and Select asserted that they were not liable to the plaintiffs as a matter of law because the plaintiffs had waived their right to object |ato any title defects under the provisions of the Special Warranty Deed and also had opted to forego having a survey, signing a written waiver to that effect. The plaintiffs argued that the terms of the Special Warranty Deed are ambiguous and therefore the waiver they signed was invalid. Alternatively, they argued that the waiver provision was not brought to their attention or explained, and that, therefore, they had not executed a knowing waiver. The trial court granted the motion for summary judgment from the bench, dismissing the plaintiffs’ claims against DLJ and Select. The court signed a written judgment to that effect on July 22, 2013. This appeal followed.
The sole issue raised on appeal is whether the trial court erred by finding that the *1188 plaintiffs waived their right to recover damages from DLJ and Select for the title defect complained of in the petition.
DISCUSSION
We have jurisdiction over this appeal because the trial court’s judgment dismissing the plaintiffs’ claims as to one or more of the defendants is a final judgment.[5]
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Duncan v. U.S.A.A. Ins. Co., 2006-0363, p. 3 (La.11/29/06), 950 |4So.2d 544, 547. “The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). Thus, the reviewing court must determine whether there is any genuine issue of material fact and whether the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(C); Hall v. Malone, 2013-0315, p. 3 (La.App. 4 Cir. 1/15/14), 133 So.3d 91, 93 (citing Cressionnie v. Liberty Mutual Ins. Co., 98-0534, p. 3 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, 366). Evidence cited in and attached to the motion for summary judgment or memorandum filed by an adverse party is deemed admitted for purposes of the motion for summary judgment. La. C.C.P. art. 966(F)(2).
With their motion for summary judgment, DLJ and Select submitted the affidavit of Patrick Pittman, a director of Select, who averred that: (1) Select had serviced the mortgage loan taken out by Mr. Kenneth Wiley, the prior owner of the property, which loan was assigned to DLJ as mortgagee on April 23, 2008; (2) Upon Mr. Wiley’s default, DLJ foreclosed on the note and then acquired the property at a sheriff’s sale on August 26, 2008; (3) DLJ, represented by Select, sold the property to the plaintiffs by Special Warranty Deed on July 17, 2009; (4) the only survey of the property in DLJ’s possession was a 1997 survey; and (5) DLJ did not construct any building or portion of a building on the property during the time it owned the property. Also submitted with Mr. Pittman’s affidavit were |,r,copies from Select’s files of relevant documents referenced in the affidavit, including the original Note, the Mortgage, the 1997 survey of the property performed by Stewart Title (which does not show any encroachment); the Act of Assignment to DLJ, the Sheriff’s Deed, and the Special Warranty Deed. Finally, DLJ and Select submitted a copy of First American’s “Notice of Availability of Survey,” which is completed and signed by the plaintiffs, and an Orleans assessor’s office map (printed from the office’s website in 2013), which purportedly shows the encroachment.
In opposition to the motion, the plaintiffs submitted the affidavit of plaintiff Chaniel Age, in which she averred that: (1) No one went over the provisions of the Special Warranty Deed with the buyers before they signed it; (2) The waiver of warranties was not brought to the attention of the buyers or explained to them; and (3) The Special Warranty Deed was ambiguous in *1189 that it contained one clause providing that the sale was being made with full warranty of title and another clause providing there was no warranty of title.
Reviewing this evidence, we conclude, as did the trial court, that the plaintiffs expressly waived their right to recover for the title defect complained of in their suit — the encroachment of portions of the house onto the neighboring lot. The Special Warranty Deed is two pages in length. Although the first paragraph contains the general provision: “Seller does hereby sell and deliver, with full warranty of title ... [the property described],” the contract goes on to specifically state:
| ^Sellers, Brokers and Designated Agents make no warranty or other assurances whatsoever concerning property measurements, square footage, room dimensions, lot size, property lines or boundaries. Buyers acknowledge that the property is purchased as seen waiving any and all errors and inconsistencies or omissions in such measurements, determinations, or square footage by Brokers and Designated Agents or on behalf of Seller.
It is understood and agreed that the property is sold by the seller and purchased by the buyers “AS IS, WHERE IS” without any warranties whatsoever as to fitness or condition, whether expressed or implied, and Buyers expressly waive the warranty of fitness and the guarantee against hidden or latent defects (defects in the property sold which render it useless or render its use so inconvenient or imperfect that Buyers would not have purchased it had they known of the vice or defect) provided by law in Louisiana, more specifically, that warranty imposed by Louisiana Civil Code art. 2520 et seq. [sicjwith respect to Seller’s warranty against latent or hidden defects of the property sold, or any other applicable law, not
even for a return of the purchase price. Buyers forfeit the right to avoid the sale or reduce the purchase price on account of some hidden or latent vice or defect in the property sold. Sellers expressly subrogate Buyers to all rights, claims and causes of action Seller may have arising from or relating to any hidden or latent defects in the property. This provision has been called, to the attention of the Buyers and fully explained to the Buyers, and the Buyers acknowledge that they have read and understand this waiver of all express or implied warranties and accepts the property without any express or implied warranties. [Emphasis added.]
The plaintiffs initialed this section waiving all express and implied warranties. Following this section is additional language that further limits the buyers’ rights:
The subject property is being sold without warranty by the seller but with full subrogation and substitution of all rights of warranty, which the seller may have against previous owners.
Grantor conveys that it is seized and possessed of the said land and has a right to convey it, and warrants the title against the lawful claims of all persons claiming by, through and under it, but not further otherwise.
The following reservations from and exceptions to this conveyance and the warranty of title made herein shall apply: ⅜ $ ⅜
_J[¡Any conditions that would be revealed by a physical inspection and survey of the property. [Emphasis added.]
The plaintiffs’ signatures appear at the end of the Special Warranty Deed. In addition to this document, DLJ and Select submitted a form the plaintiffs completed as part of their application for title insurance issued by First American. The form *1190 is entitled “Notice of Availability of Survey.” It provides, in pertinent part:
You have the right to obtain a survey which may:
* * *
2) determine whether structures or fences on the premises encroach on neighboring property, violate setback lines or zoning ordinances;
[[Image here]]
Without a survey you may not know these facts. The additional cost of a survey is $600 to 1000.00[sic] if you request it at this time.
If you are uncertain as to whether you should obtain a survey, you are urged to seek independent advice.
On this form, the plaintiffs checked off the box indicating “We do not request a survey.” Above the plaintiffs’ signatures is the sentence: “If we do not choose to obtain a current survey, we agree to hold Resource Title Agency, Inc.... harmless from any liability which may occur as a result of the lack of a current survey.”
In opposition to the motion for summary judgment and on appeal, the plaintiffs argue that the terms of the Special Warranty Deed are ambiguous, and, therefore, the express waiver of warranties is unenforceable; and alternatively, that the waiver of warranties was never brought to their attention, such that they did not understand what they were signing. Considering the evidence submitted with the motion, we reject these arguments.
|sThe Special Warranty Deed is not ambiguous. It contains a general warranty, which is then explicitly restricted in two respects: (1) all express and implied warranties are disclaimed/waived; and (2) an express warranty of title is granted subject to six named exceptions, including “[a]ny conditions that would be revealed by a physical inspection and survey of the property.” Louisiana Civil Code article 2050 provides “Every provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.” Further, in the interpretation of contracts, the specific controls the general. Aikman v. Thomas, 2003-2241, p. 6 (La.App. 1 Cir. 9/17/04), 887 So.2d 86, 90 (citing Mixon v. St. Paul Fire & Marine Ins. Co. of St. Paul, Minn., 147 La. 302, 305-306, 84 So. 790, 791 (La.1920)). Viewing the Special Warranty Deed as a whole, we find that the specific disclaimer/ waiver of warranties clearly modifies the general reference to the property being conveyed with “full warranty of title” that precedes the disclaimer. Any other interpretation would negate more than half of the language of this contract.
We also find no merit in the plaintiffs’ alternative argument that the contractual provisions were not explained to them. This court has held that three factors must be present to create a binding waiver of implied warranties: (1) the waiver must be written in clear and unambiguous terms; (2) the waiver must be contained in a written contract; and (3) the waiver must be brought to the attention of the buyer or explained to him. Boos v. Benson Jeep-Eagle Co., Inc., 98-1424 (La.App. 4 Cir. 6/24/98), 717 So.2d 661, 663-64. The seller has the burden of proving a waiver by the buyer. Id. The third requirement, that the waiver be brought to the attention of the buyer, is satisfied if the buyer is required to (and |9does) initial the warranty provision. Alexander v. Henderson Condo. Ass’n, Inc., 99-2906, p. 3 (La.App. 4 Cir. 12/27/00), 778 So.2d 627, 629.
In the case before us, all three requirements are met. The waiver is clear and unambiguous; it is contained in the written Special Warranty Deed; and the buyers were required to place their initials directly beneath the waiver provision. As *1191 an additional safeguard, the waiver provision includes an express acknowledgement that the provision has been called to the attention of and fully explained to the buyers, who acknowledge that they have read and understood it. Finally, the plaintiffs here were warned about the dangers of failing to obtain a survey in the form they had to sign for First American. Despite this specific notice that one of the defects that could be detected by a survey was the potential encroachment of the premises onto a neighboring property, the plaintiffs expressly declined to obtain a survey. It is undisputed that a survey performed at the time of the plaintiffs’ purchase would have disclosed the encroachment complained of.
In view of the evidence, we conclude that DLJ and Select met their burden of proving that the plaintiffs waived any rights they may have had to recover from the seller or its agent any damages caused by the encroachment of the house onto the adjacent lot. There being no material issue of genuine fact remaining, we find that DLJ and Select were entitled to judgment as a matter of law.
CONCLUSION
Accordingly, for the reasons stated, the summary judgment dismissing the plaintiffs’ claims against DLJ and Select is affirmed.
AFFIRMED.

. DU had acquired the property at a sheriff's sale.

. The plaintiffs named additional defendants that are not pertinent to this appeal and therefore are not referenced here. See footnote 5 infra.

. The time was not specified.

. A judgment that dismisses the lawsuit as to one or more parties is a final judgment pursuant to La. C.C.P. art. 1915 A. A final judgment is appealable. La. C.C.P. art. 2083.

. See La. C.C.P. arts. 1915 A and 2083, and footnote 4, supra. The record before us does not disclose whether there are any defendants remaining in the lawsuit. The City of New Orleans, which was an original defendant, was dismissed without prejudice several months after the lawsuit was filed. The record does not disclose whether Resource Title, and/or the owner of the property encroached upon (also an original defendant, but not pertinent to this appeal), still remain defendants.